UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS OWENS,

                          Plaintiff,                Civil Action No.: 14-10830
                                                  Honorable Laurie J. Michelson
            v.                         Magistrate Judge David R. Grand

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                          Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [10, 12]

Plaintiff Thomas Owens brings this action pursuant to 42 U.S.C. § 405(g), challenging a final decision of Defendant Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [10, 14], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.      RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") credibility determination is supported by substantial evidence of record, leading to an appropriate hypothetical question and a sound conclusion on the issue of disability. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [12] be GRANTED, Owens's motion [10] be DENIED and that, pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's decision be AFFIRMED.

II.     **REPORT**

   A.     **Procedural History**

   On September 6 and 7, 2011, Owens filed applications for DIB and SSI, respectively, alleging disability as of November 19, 2007.  (Tr. 160-72).  The claims were denied initially on November 14, 2011.  (Tr. 86-89).[1]  Thereafter, Owens filed a timely request for an administrative hearing, which was held on September 19, 2012, before an ALJ.  (Tr. 32-57).  Owens, represented by counsel, testified at the hearing, as did a vocational expert ("VE").  *Id.*  In a written decision dated November 27, 2012, the ALJ found Owens not disabled.  (Tr. 14-31).  On December 20, 2013, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner for purposes of this review.  (Tr. 1-4).  Owens filed for judicial review of the final decision on February 21, 2014.  [1].

   B.     **Framework for Disability Determinations**

   Under the Act, DIB and SSI are available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" in relevant part as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

   The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

   Step One:  If the claimant is currently engaged in substantial gainful activity,

---

[1] It appears that Owens filed for benefits on three prior occasions, in 2008, 2009 and 2010.  (Tr. 138-59).  Each application was denied at the initial level and it does not appear, at least from the record, that Owens further pursued these other claims.  (Tr. 76-85).

benefits are denied without further analysis.

Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Schueneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 U.S. Dist. LEXIS 150240 at *21 (E.D. Mich. Dec. 6, 2011) *citing* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### C.    Background

#### *1.    Plaintiff's Testimony and Subjective Reports*

Owens, who was 24 at the time of filing, (Tr. 179), reported that he is disabled from all work due to debilitating back pain, depression and anxiety. (Tr. 183; 199). He testified that he sustained a back injury in high school but that it became debilitating after lifting a trash can at work. (Tr. 39-40). He had surgery to repair it in 2008, but since that time the pain has only increased. (Tr. 40; 199). He testified that he attempted to return to work on several occasions after his back injury, but that each time he had to stop after only a day or so. (Tr. 38-39; 49). He

wears a back brace and takes medication for the pain.  (Tr. 185; 205).  He reported that his medication makes him tired and nauseated.  (Tr. 50; 206).

He testified that his pain makes it impossible to do much of anything throughout the day – his fiancée helps him get out of bed, he tries to loosen up, he watches some television and then has to lie back down.  (Tr. 43-44; 200).  He does not prepare meals, drive or do household chores, does not socialize with anyone other than his fiancée, and has some difficulty with personal care, including dressing and using the toilet.  (Tr. 40-42; 200-204).  He does not drive due to numbness in his legs.  (Tr. 48; 202).  He sleeps only three or four nights a week due to pain and can sleep between 1-3 hours at a stretch.  (Tr. 44; 200).  He reported not being able to even lift a milk jug, and testified that on good days he can lift one from the car to the house.  (Tr. 46-47; 204).  He testified to being able to sit 15-40 minutes at a time and being able to stand the same amount of time, for a total of about two hours.  (Tr. 45-46).  He testified to having difficulty with stairs and that bending to pick up a shoe incapacitates him for the remainder of the day.  (Tr. 47).  He reported being able to walk between a few steps and a few blocks depending on how bad the pain is on any given day.  (Tr. 46; 204).  He reported that his ability to concentrate also varies due to pain and can be anywhere from one minute to two hours.  *Id.*  He reported getting along well with others, and being able to follow instructions.  (Tr. 204-205).

He reported depression stemming from his pain, did not report being treated by anyone for depression, but did report taking medication for it.  (Tr. 186; 204; 209).  He also reported panic attacks during stressful situations.  (Tr. 205).

### 2.   *Medical Evidence*

Owens does not take direct issue with the ALJ's evaluation of the medical evidence in this case.  Further, the Court has reviewed the entire record, and will discuss the relevant

4

portions of that record within the analysis portion of this Report and Recommendation.

**D.   The ALJ's Findings**

Following the five-step sequential analysis, the ALJ concluded that Owens was not disabled.  At Step One, he found that Owens had not engaged in substantial gainful activity since his alleged onset date.  (Tr. 19).  At Step Two, the ALJ found the following severe impairments: "status post lumbar laminectomy, laminotomy, and posterolateral fusion and spondylotic changes to the lower thoracic spine."  *Id.*  The ALJ found that neither Owens's reported depression and anxiety, nor an unreported but documented abnormal heart condition, constituted a severe impairment.  (Tr. 20-21).  At Step Three, the ALJ determined that none of Owens's severe (nor even his non-severe mental condition) met or medically equaled a listed impairment.  (Tr. 21). In making this determination, the ALJ concluded that Owens had only mild limitations in his activities of daily living, social functioning and ability to maintain concentration, persistence and pace, with no episodes of decompensation.  (Tr. 21-22).

Next, the ALJ assessed Owens's residual functional capacity, finding him capable of sedentary work that is unskilled, with a sit/stand option every 30-60 minutes, no walking beyond one city block, only occasional bending, twisting, turning, crawling, squatting, kneeling or climbing, and no exposure to dangerous heights or moving machinery.  (Tr. 22-23).  As discussed below, *infra* at 12, the ALJ considered a medical source statement of Owens's primary care physician, Dr. David Dotson, and gave it little weight.  (Tr. 25).

At Step Four, the ALJ determined that, based on his RFC, Owens could not return to his past relevant work.  (Tr. 25).  At Step Five, however, the ALJ concluded, based in part on VE testimony, that there remained a significant number of jobs that Owens could still perform.  (Tr. 26-27).  Specifically, the VE testified that a hypothetical claimant with Owens's RFC could

perform the occupations of information clerk (2,100 jobs in the region), general office clerk (2,600 jobs) and sorter/packer (1,800 jobs). (Tr. 26; 53-54). Therefore, the ALJ concluded, Owens was not disabled within the meaning of the Act. (Tr. 27).

### E.     Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499

F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

## F.    Analysis

Despite Owens's brief's heading stating that he takes issue with the ALJ's evaluation of his medical records and opinion evidence, as well as with his formulation of an inaccurate hypothetical, the body of his brief hardly touches on those issues. [*See generally* 10]. His motion consists mainly of a compilation of quotations of black letter case law, a recitation of his own testimony, and some reference to the medical record, but with no accompanying analysis or application of the law to the facts of his case. *Id.* Further, Owens does not actually appear to challenge the ALJ's assessment of the medical evidence and, despite dedicating pages of his brief to outlining the treating physician rule, fails to even argue that the ALJ improperly weighed the opinion evidence in this case. [10 at 9-10]. Finally, although his argument heading does not suggest he takes issue with the ALJ's credibility determination, the issue of credibility is one of

only two arguments in his brief that could be considered even partially developed, the other being an issue with the VE's apparent failure to list Dictionary of Occupational Title ("DOT") codes in her testimony. (*Id.* at 9-10).

Owens's brief is very similar to one his counsel filed in another matter, *Burger v. Comm'r of Soc. Sec.*, 2013 WL 2285375 (E.D. Mich. May 23, 2013), which the court found to present no non-waived issue. And, on March 24, 2014, Chief Judge Rosen issued a scathing commentary on Barber-Woodley's counsel's approach to his clients' summary judgment briefs:

> … [T]his reliance on conclusory assertions and absence of developed argument has become the calling card of Plaintiff's counsel in a number of recent Social Security cases, and nearly every Magistrate Judge in this District has expressed this concern with the work product of Plaintiff's counsel. In light of this lamentable record of filing one-size-fits-all briefs and inviting the Judges of this District to formulate arguments and search the record on his clients' behalf, Plaintiff's counsel is strongly cautioned that this Court will carefully examine his submissions in future suits to ensure that they advance properly supported arguments that rest upon (and cite to) the facts of a particular case. Failure to adhere to these standards will result in the imposition of sanctions and possible referral of counsel for disciplinary proceedings.

*Fielder v. Comm'r of Soc. Sec.*, 2014 WL 1207865, at *1, n. 1 (E.D. Mich. Mar. 24, 2014) (internal citations omitted). Despite this warning, Owens's counsel has continued to file "one-size-fits-all" briefs, containing the very same "conclusory allegations" and "absence of developed argument" that Chief Judge Rosen found wholly insufficient in *Fielder*. The instant brief was filed on June 2, 2014, over two months after Judge Rosen's decision was issued, leading this Court to believe Owens's counsel does not even read the decisions of this Court. Here, then, as in *Burger*, the Court could find that Owens has waived his arguments. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (internal quotations omitted). Nonetheless, for the sake of completeness, and because

8

2:14-cv-10830-LJM-DRG   Doc # 13   Filed 12/16/14   Pg 9 of 18   Pg ID 480

a client in this position should not be faulted for the failings of his counsel, the Court will consider all of the evidence in light of the arguments Owens raises (albeit vaguely).[2]

### 1.    *Credibility*

Although not specifically couched as such, Owens appears primarily, if not exclusively, to take issue with the ALJ's evaluation of his credibility, as evidenced by the fact that the evidence he cites as support is comprised primarily of his own testimony, with smatterings of medical evidence thrown in for good measure, none of which is synthesized to explain what, if any, error the ALJ actually made.   In fact, the majority of medical evidence Owens cites in support of his argument that the ALJ erred in his credibility determination, is simply a recitation of his own subjective complaints to his doctors, or mere diagnoses of his conditions, neither of which is evidence that properly corroborates a claimant's subjective reports of pain and limitations.  *See DePottey v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS 117421, *43 (E.D. Mich. July 25, 2014) *adopted by* 2014 U.S. Dist. LEXIS 116858 (E.D. Mich. Aug. 22, 2014) *citing Masters v. Astrue*, 818 F. Supp. 2d 1054, 1067 (N.D. Ill. 2001) ("[A] doctor's notation in

---

[2] Owens does not raise any challenge to the ALJ's determination that his heart condition was not a severe impairment.  (Tr. 21).  The Court notes only that the objective medical evidence of record shows that a chest x-ray taken in July 2008 showed no acute process (Tr. 275) and an ECG conducted around the same time was normal.  (Tr. 245).  In fact, the only evidence of any heart condition was a nonspecific note in Dr. Dotson's treatment notes in April 2012 where he referred Owens to a specialist after noting "nonspecific ischemic changes on EKG."  (Tr. 21; 393; 396-97).  There is no additional evidence related to this abnormal finding.
Regarding his alleged mental impairment, although Owens once mentions this impairment in his brief, it is confined to his concluding statement, where he argues that he is "severely limited as a result of his physical and mental conditions."  [10 at 15].  At no point does he specifically challenge the ALJ's conclusion that his mental impairment is non-severe.  (Tr. 21).  Nor does he argue error with the ALJ's findings of only mild limitations in the three areas of mental functioning.  Nevertheless, the Court notes that the evidence of record reveals only one complaint of depression and anxiety during the relevant period, and that as a result, Dr. Dotson prescribed Trazadone, but did not conduct a mental status exam or refer Owens for other mental health services.  (Tr. 21; 339-40).  The Court finds that the ALJ's conclusion is thus supported by substantial evidence of record.

his notes of a claimed symptom or subjective complaint from the patient is not medical evidence; it is the opposite of objective medical evidence.  [Thus, a]n ALJ is not required to accept the statement as true . . . "); *see Dukes v. Comm'r of Soc. Sec.*, No. 10-436, 2011 U.S. Dist. LEXIS 105526 at \*16, 2011 WL 4374557 (W.D. Mich. Sept. 19. 2011) *quoting McKenzie v. Comm'r of Soc. Sec.*, No. 99-3400, 2000 U.S. App. LEXIS 11791, 2000 WL 687680 at \*5 (6th Cir. May 19, 2000) ("[T]he mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual.").

The Sixth Circuit has held that an ALJ is in the best position to observe a witness's demeanor and to make an appropriate evaluation as to her credibility.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  Thus an ALJ's credibility determination will not be disturbed "absent compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  When a complaint of pain is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, she must consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case record." to determine if the claimant's claims regarding the level of her pain are credible.  SSR 96-7, 1996 SSR LEXIS 4 at \*3, 1996 WL 374186 (July 2, 1996); *see also* 20 C.F.R. § 404.1529.

Contrary to Owens's arguments, the ALJ did consider his subjective reports and testimony, and properly weighed that evidence against the objective medical evidence of record, finding that the objective evidence did not support Owens's subjective reports.  The ALJ considered Owen's testimony that his pain was so substantial that he needed assistance with personal care two to three times a week, had a difficult time concentrating, did not drive due to

10

numbness in his legs, and that his pain was variable from day to day.  (Tr. 23).  The ALJ, however, found that this severe level of disability was not supported by the medical evidence of record.  Specifically, the ALJ found that, while Owens's condition prior to his surgery in July 2008 revealed lumbar spondylolysis, degenerative facet changes and diffuse disc bulges (Tr. 19-20; 248; 249-50; 305-308), after his surgery, his lumbar films consistently reflected good alignment, with no disc herniation, central canal stenosis or neural foraminal narrowing (Tr. 24; 244; 263; 336; 357; 359-60; 366).  The ALJ noted that the only other film of note was a January 2012 MRI of Owens's thoracic spine, which revealed mild spondylotic changes, but without focal disc herniation or stenosis.  (Tr. 24; 365).

The ALJ further noted that Owens's inconsistent patterns of treatment were contrary to his claims of constant disabling pain.  The ALJ pointed out that Owens did not present any treatment records for the entire year of 2009.  (Tr. 20).  In addition, there was almost another year between an appointment that Owens had with his neurosurgeon, Dr. Vivekanand Palavali,[3] in December 2010, and an appointment with Dr. Dotson in October 2011.  (Tr. 317-18; 339-40).  These were valid considerations by the ALJ.  SSR 96–7p ("[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints . . . ."); *Strong v. Soc. Sec. Admin.*, 88 Fed. Appx. 841, 846 (6th Cir. 2004) ("In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment.  A failure to do so may cast doubt on a claimant's assertions of disabling pain.").

In addition, the ALJ noted that examination results failed to show limitations consistent with Owens's subjective complaints of debilitating pain.  In follow-up appointments with Dr.

---

[3] The ALJ reverses the neurosurgeon's name in his decision, calling him Dr. Vivekanand instead of Dr. Palavali.  (Tr. 20).

Palavali, Owens was consistently found to have normal strength, sensation, reflexes and gait, with a negative straight leg raising test.  (Tr. 317).  Dr. Palavali, on two separate occasions, over two years apart, concluded that Owens's pain was myofacial in nature and would benefit from exercise and physical therapy.  (Tr. 24; 317-18; 319-20).  While Owens reported that he did not undergo physical therapy due to financial constraints, he also admitted to being noncompliant with the home exercises he was assigned.  (Tr. 317-18).  Although Dr. Dotson diagnosed Owens with cervical and lumbar radiculopathy, as well as thoracic back pain, his treatment notes reveal no examination results during this period other than two positive straight leg raising tests, in April and May 2010, respectively.  (Tr. 24; 354; 356).  Another straight leg raising test conducted by Dr. Palavali in December 2010 was negative.  (Tr. 317).  The ALJ noted that nowhere in Dr. Dotson's treatment notes were there results of other tests that would support diagnoses of radiculopathy, intimating that Dr. Dotson's diagnoses were likely solely the result of Owens's subjective complaints.  (Tr. 24-25; 339-40; 353-56; 375; 390; 394).  Owens offers no evidence to rebut this conclusion and the Court finds it supported by substantial evidence.  *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007) (approving ALJ's decision declining to give treating sources controlling weight where decision stated that sources' reports were "inconsistent with the overall evidence of record" and sources formed their opinion solely from claimant's subjective symptoms).

For these same reasons, the ALJ gave only limited weight to Dr. Dotson's medical source statement.  (Tr. 25; 390).  An ALJ must give a treating physician's opinion controlling weight where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in the case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) *quoting* 20 C.F.R. §

404.1527(d)(2). If an ALJ declines to give a treating physician's opinion controlling weight, she must then determine how much weight to give the opinion, "by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) *citing Wilson*, 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(d)(2). The ALJ must give good reasons, supported by substantial evidence in the record, for the ultimate weight given to a treating source opinion. *Id.*, *citing* SSR 96-2p, 1996 SSR LEXIS 9 at *12, 1996 WL 374188 at *5. An ALJ is not required to give any special weight to a treating source's conclusion that a claimant is disabled, as this conclusion is reserved to the Commissioner alone, based on all the evidence of record. 20 C.F.R. § 404.1527(e)(1), (e)(3).

Here, the ALJ found that Dr. Dotson's statement, limiting Owens to lifting 10 pounds only occasionally, limiting his ability to use hand and foot controls with his left extremities, and finding that his conditions would interfere with his ability to work on a daily basis, was not supported by the medical evidence as a whole, or even Dotson's own treatment records, as his diagnoses of cervical and lumbar radiculopathy had not been confirmed by any imaging studies, EMGs or even nerve testing during physical exams, and there had been no exam records of any doctor supporting limitations of Owens's hands or feet. (Tr. 24-25). Indeed, as discussed above, Dr. Palavali routinely noted good strength, sensation and reflexes at his appointments. (Tr. 317-20). While Owens mentions the treating physician's rule in his brief, he takes no specific issue with the ALJ's evaluation of Dr. Dotson's opinion evidence, and the Court finds, for the reasons just stated, that the weight the ALJ assigned to that opinion is supported by the evidence of record. *See* SSR 96-2p, 1996 SSR LEXIS 9, at *12; *Blakely*, 581 F.3d at 406. For all of these

13

reasons, the Court finds that the ALJ's credibility determination is supported by substantial evidence, and should be affirmed.[4]  *See Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence.") (citing *Bradley v. Sec'y of Health and Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988)).

### 2.   *Adequacy of Hypothetical*

Owens parlays his argument regarding credibility into an argument regarding the

---

[4] The Court acknowledges that certain of the ALJ's reasons for discounting Owens's credibility are not supported by the evidence, specifically the notion that Owens failed to heed his doctor's recommendation for physical therapy, (Tr. 24), failed to seek additional medication for pain, (Tr. 25), and the variable nature of his pain.  (Tr. 24-25).  The Court notes that Owens stated on more than one occasion that he had not undergone physical therapy solely because he could not afford it (Tr. 310-16; 317-18; 333), and thus his failure to do so is not a valid reason for finding him less than credible.  *See* Soc. Sec. R. 96-7p, 1996 SSR LEXIS 4 at *8 ("The individual may be unable to afford treatment and may not have access to free or low-cost medical services.").  Further, contrary to the ALJ's finding, records of Dr. Dotson show that Owens was, at least as of 2012, being prescribed his pain medication in increasing doses (Tr. 375; 376), although it is true he neither alleged it was ineffective or sought additional medications to better treat his pain. (*See e.g.* 347 (Owens acknowledging in July 2010 that Tramadol "works fine" but that he does not like the headaches)).  Finally, the fact that Owens's pain was variable was admitted, and explained, by him in his testimony (Tr. 45-46), and thus the ALJ's pointing to alleged inconsistencies in Owens's abilities based on his admission that his pain varied day to day (Tr. 24-25), is not a valid reason to find him not credible.

The Court notes that Owens himself does not actually raise these inconsistencies as issues for this Court to address, and thus the Court could easily find the issues waived.  Nevertheless, the Court finds that the ALJ gave a sufficient number of other valid reasons for finding Owens less than fully credible, as noted above, and those reasons are supported by substantial evidence of record.  Recognizing that an ALJ's credibility determination should not be reversed absent compelling reason, and acknowledging recent Sixth Circuit case law stating that ALJ credibility determinations are "virtually unchallengeable," *Ritchie v. Comm'r of Soc. Sec.*, 540 Fed. Appx. 508 (6th Cir. Mich. 2013); *Payne v. Comm'r of Soc. Sec.*, 402 Fed. Appx. 109, 2010 WL 4810212, at *3 (6th Cir. 2010), the Court finds that the invalid reasons noted above do not undermine the ALJ's otherwise valid credibility determination and are merely harmless error. *See Johnson v. Comm'r of Soc. Sec.*, 535 Fed. Appx. 498, 507 (6th Cir. 2013) ("[E]ven if an ALJ's adverse credibility determination is based partially on invalid reasons, harmless error analysis applies to the determination, and the ALJ's decision will be upheld as long as substantial evidence remains to support it) *citing Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

hypothetical questions asked of the VE.  He specifically argues that the ALJ should have considered the VE's testimony that, if Owens were found fully credible, he would be unable to sustain the attendance and concentration needed for full time work.

An ALJ is entitled to rely upon the testimony of a VE in response to hypothetical questions to the extent those questions accurately portray the claimant's physical and mental impairments.  *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  At the same time, an ALJ is only required to pose those hypothetical limitations that he finds credible.  *Burbo v. Comm'r of Soc. Sec.*, No. 10-2016, 2011 U.S. App. LEXIS 26143 (6th Cir. Sept. 21, 2011) *citing Stanly v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994).  Here, as discussed in detail above, the ALJ found Owens less than fully credible, a finding that is supported by substantial evidence of record.  Because the ALJ's hypothetical question accurately portrays the limitations he found credible, and because his credibility determination has already been found to be supported by substantial evidence of record, his hypothetical question is accurate and he was entitled to rely on the VE testimony that it generated.

### 3.    *DOT Codes*

Finally, Owens challenges that ALJ's decision on the basis that the VE's testimony regarding the jobs that Owens could perform did not include the specific DOT codes for those jobs.  Owens argues that this is reversible error because "it is impossible to determine what exertional level these jobs are at []or if these jobs [are] actually compatible with the RFC that [the ALJ] put forth."  [10 at 12].  However, as the Commissioner notes, Owens's counsel did not raise this issue at the hearing, and he fails to identify any actual error or prejudice that he sustained in the VE's omission of DOT codes.

This case is identical to the case of *Holland v. Comm'r of Soc. Sec.*, No. 09-240, 2010 U.S. Dist. LEXIS 96805, *52 (S.D. Ohio Mar. 1, 2010) *adopted by* 2010 U.S. Dist. LEXIS 96808 (S.D. Ohio Sept. 26, 2010).  In that case, just as here, the claimant challenged on appeal the VE's omission of DOT codes.  The court rejected that argument, finding that the social security rulings require only that the VE's testimony be consistent with the DOT, and that where a conflict exists, the ALJ should elicit a reasonable explanation for it.  *Id.* at *51-52 *citing* SSR 00-4p, 2000 SSR LEXIS 8.  The court noted that the plaintiff's attorney failed to raise the lack of DOT codes as an issue at the hearing and the ALJ in the case had confirmed that the VE's testimony was consistent with the DOT.  *Id.* at *52.  The court found that, consistent with Sixth Circuit precedent, the ALJ was entitled to rely on, and was not required to further investigate, the VE's testimony after it was found consistent with the DOT.  *Id.*

Here, too, Owens's counsel did not raise the issue of the VE's lack of DOT codes at the administrative hearing.  (Tr. 53-57).  Further, the ALJ specifically asked the VE whether her testimony was consistent with the DOT and was told that it was, except for the sit/stand option, and the VE went on to fully explain how she accounted for that additional limitation.  (Tr. 54-55).  This was all the ALJ was required to do.  *Beinlich v. Comm'r of Soc. Sec.*, 345 Fed. Appx. 163 (6th Cir. 2009) (ALJ under no independent duty to confirm that VE's testimony correlates to the DOT beyond confirming as much with the VE through testimony).  Therefore, Owens's argument fails.

For all of the foregoing reasons, the Court finds that the ALJ's decision that Owens was not disabled under the Act is supported by substantial evidence of record and should not be disturbed.

## III.     CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Owens's Motion for Summary Judgment **[10]** be **DENIED**, the Commissioner's Motion **[12]** be **GRANTED**, and this case be **AFFIRMED**.

Dated: December 16, 2014               s/David R. Grand
Ann Arbor, Michigan                    DAVID R. GRAND
                                       United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal.   *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is

otherwise no page limitation.

## **CERTIFICATE OF SERVICE**

     The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 16, 2014.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager

18